IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THEODORE (Ted) E. DAUVEN, BARBARA
G. DAUVEN, CHRISTIANA C. DAUVEN,

                Plaintiffs,

        v.

U.S. BANCORP, U.S. BANK NATIONAL
ASSOCIATION, as Trustee for MASTR Asset
Backed Securities Trust, 2006-WMC2, WELLS
FARGO AND COMPANY, IAN REEKIE,
REEKIE PROPERTIES, LLC., STATE FARM
MUTUAL AUTOMOBILE INSURANCE CO.,
J.R. OLEYAR, DANIEL STAUFFER,
SHAWNA STAUFFER, RANDALL
STAUFFER, CHRISTINA STAUFFER,
ELIZABETH BALKOVIC ALLAN, TERESA
BALKOVIC, MARY MARGARET WEIBEL,
SAMUEL TAYLOR V., ANNIE MECKLEY
TENNESON, DENISE FRICKE, and
KINGSLEY W. CLICK,

                Defendants.

3:13-cv-844-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

1 - FINDINGS AND RECOMMENDATION

*Pending Motions*

Theodore, Barbara, and Christina Dauven (collectively "Dauvens"), appearing *pro se*, filed a 55-page Amended Complaint naming eighteen defendants and asserting thirteen claims – some are civil rights violations, pursuant to 42 U.S.C. §§ 1983 and 1985, and others are assorted state law violations.  In support of their Amended Complaint, the Dauvens also filed the Declaration of Theodore Dauven (13 pages) and the Declaration of Barbara Dauven (70 pages).  Through these pleadings, the Dauvens detail events involving their former landlord, former neighbors, certain financial institutions, an insurance company, a real estate company and several other individuals who came into contact with the Dauvens over a period of years.  The dispute focuses primarily on the Dauvens' eviction from a rental property, and the attendant loss of some of their personal effects in that process.  The Dauvens seek, among other things, $10.2 million in compensatory damages, and $18.1 million in punitive damages as redress for the alleged wrongful actions.

With one exception, all defendants who were properly served move either to dismiss or for an entry of judgment on the respective claims against them.[1]  Oral argument was heard, and for the reasons set forth below, defendants' motions should be granted and the Dauvens' Amended Complaint should be dismissed in its entirety.

*Preliminary Matters*

As a preliminary matter, there are two pending Requests for Judicial Notice pursuant to FED. R. CIV. P. 201.  First, in support of their 42 U.S.C. § 1985 claims, the Dauvens ask the court to take judicial notice of the Supreme Court's decision in *Kush v. Rutledge*, 460 U.S. 719 (1983).  In

---

[1]Denise Fricke was dismissed by the Dauvens after she apologized.  Elizabeth Balkovic Allan was served but has not entered an appearance.  Daniel Stauffer, Shawna Stauffer and Teresa Balkovic have not been served.

addition, U.S. Bancorp, U.S. Bank NA and Wells Fargo Bank NA (collectively "Banks") request this court take judicial notice and admit into evidence the exhibits attached to the Declaration of Kristen L. Tranetzki in Support of Request for Judicial Notice. Specifically, Exhibit 1 are true and correct copies of the Emergency Ex Parte Motion to Stop Execution on FED Judgment, and the Order denying the Motion filed in Clackamas County Circuit Court Case No. FE110602, entitled *U.S. Bank National Association v. Ted Dauven and Barbara Dauven.* Exhibit 2 is a true and correct copy of the Appellate Judgment and Supplemental Judgment submitted by an Oregon Court of Appeals panel consisting of Judges Armstrong, Brewer, and Duncan, with an effective date of October 16, 2012, in Clackamas County Circuit Court Case No. FE110602, designated on appeal as A148634, entitled *U.S. Bank National Association v. Ted Dauven and Barbara Dauven.* Exhibit 3 is a true and correct copy of the Findings and Recommendations issued by Judge Papak on June 7, 2010, in U.S. District Court, District of Oregon, *Dauven v. U.S. Bank National Association,* Case No. 3:09-cv-1471. Exhibit 4 is a true and correct copy of the Findings and Recommendations issued by Judge Papak on November 8, 2010, in U.S. District Court, District of Oregon, *Dauven v. U.S Bank National Association,* Case No. 3:09-cv-1471. According to the Banks, these documents are proper subjects of judicial notice because they are documents whose contents are a matter of public record, publicly available, and whose accuracy are not reasonably subject to debate. FED. R. EVID. 201(b).

Rule 201(b) provides: "The court may judicially notice a fact that is not subject to reasonable dispute. . . ." FED. R. EVID. 201(b). In ruling on a motion to dismiss, a district court may consider "matters properly subject to judicial notice" in accordance with the Federal Rules of Evidence. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007); FED. R. EVID. 201(b).

3 - FINDINGS AND RECOMMENDATION

Here, the court grants the Dauvens' request for Judicial Notice of the Supreme Court's published decision in *Kush*. Simply enough, that decision is a "fact that is not subject to reasonable dispute." FED. R. EVID. 201(b). In addition, the court grants the Banks' request for Judicial Notice because the documents offered by the Banks are judicial records, *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125-26 (9th Cir. 2002), they relate to proceedings that involve the same parties reflected in those documents, *Egan v. Teets*, 251 F.2d 571, 577-79 (9th Cir. 1957), and those judicial developments "affect [the court's] consideration of the various issues presented," *Bryant v. Carleson*, 444 F.2d 353, 357 (9th Cir. 1971).

## Legal Standards

### I.    Rule 12(b)(6)

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." *Id.* While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a plaintiff must set forth a plausible claim for relief, a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff

to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

II.    Summary Judgment

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Discussion*

In their Amended Complaint the Dauvens assert thirteen different claims under both federal and state laws. With a few exceptions, each claim names a different grouping of defendants. As stated above, all properly served defendants, except Elizabeth Balkovic Allan, filed either a motion to dismiss or a motion for summary judgment, nine motions in all. For reasons of judicial economy and clarity, the court first will consider like challenges to the Dauvens' claims raised across several motions, *i.e.*, facial challenges to the Dauvens' § 1985 claims, and, secondly, the court will evaluate the remaining requests for dismissal that are specific to each defendant's motion.

I.    Counts One, Two, and Three - 42 U.S.C. § 1985

In Count One – Conspiracy to Convert Property, 42 U.S.C. § 1985 – the Dauvens name all defendants, except Kingsley W. Click, and allege defendants conspired to convert their personal

property in violation of their constitutional right to ownership of such property. (Am. Compl. ¶¶ 143-44.)

In    Count Two -- Conspiracy to Defame, 42 U.S.C. § 1985 -- the Dauvens name all defendants, except Kingsley W. Click and State Farm Mutual, and allege defendants conspired to defame them, particularly Barbara Dauven, by "false accusations of severe emotional and financial and verbal abuse of Joanne Balkovic. . . ." (Am. Compl. ¶ 151.)

In Count Three – Conspiracy to Obstruct Justice, 42 U.S.C. § 1985 – the Dauvens name all defendants, except Kingsley W. Click, Christina Stauffer, Teresa Balkovic and Elizabeth Balkovic Allan, and allege defendants conspired to violate their due process and equal protection rights by interfering with the Dauvens' attempts to enforce those constitutional privileges. (Am. Compl. ¶ 159.)

All defendants named in these three counts seek dismissal of the Dauvens § 1985 claims. Specifically, Annie Meckley Tenneson, Mary Margaret Weibel, and Samuel Taylor contend the Dauvens are unable to demonstrate they are members of a protected class for purposes of § 1985. Additionally, those three individuals argue the Dauvens fail to allege a deprivation of any federally protected right is support of the § 1985 claims. Ian Reekie and Reekie Properties, LLC (collectively "Reekie defendants") request dismissal of the three § 1985 claims filed against them on the ground the Dauvens fail to state claims under § 1985 because there are no allegations of race or class-based animus. Alternatively, these defendants contend the Dauvens' claims against them are barred by the statute of limitations. Randall and Christina Stauffer (collectively "Stauffers") seek dismissal of the § 1985 claims against them on the ground the Dauvens do not allege either race or class-based animus. In addition, the Stauffers contend the Dauvens do not allege any overt acts in furtherance

6 - FINDINGS AND RECOMMENDATION

of a conspiracy to support their claims under § 1985.  The Banks contend the § 1985 claims are barred by the statute of limitations and, in any event, the Dauvens' § 1985 claims must be dismissed for failure to allege either race or class-based animus.  J.R. Oleyar moves to dismiss these claims on the ground he is entitled to absolute immunity; the Eleventh Amendment bars the Dauvens' claims against him seeking damages for conduct taken in his official capacity; and, there are no allegations of race of class-based animus, which is necessary to state a claim under § 1985.  Finally, State Farm Mutual requests an entry of judgment against the § 1985 claims on the ground the Dauvens fail to show racial or class-based discriminatory animus required to support a § 1985claim.  In addition, there is no evidence State Farm Mutual deprived the Dauvens of a right guaranteed by the United States' Constitution against private encroachment, as required to show a violation of § 1985.

Section 1985 contains five discrete substantive clauses. *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983) ("As now codified in § 1985, the long paragraph is divided into three subsections. One of the five classes of prohibited conspiracy is proscribed by § 1985(1), two by § 1985(2), and two by § 1985(3).")  Section 1985(1) concerns preventing an officer of the United States from performing his or her duties.  42 U.S.C. § 1985(1).

The first clause of § 1985(2) concerns conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or juror in connection therewith.  *Id*. at 1985(2).  The second clause of § 1985(2) provides a cause of action if:

> two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

*Id.*

7 - FINDINGS AND RECOMMENDATION

The first clause of § 1985(3) provides a cause of action for a private conspiracy to deny equal protection of the laws. *Id.* at 1985(3). This clause provides a cause of action for a conspiracy "for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." *Id.* The second clause of § 1985(3) provides a cause of action for a conspiracy to interfere with federal elections. *Id.*

The Dauvens do not specify in their Amended Complaint which provisions of § 1985 they rely upon for their claims in this case, but clearly § 1985(1) (preventing federal officers from performing duties), the first clause of § 1985(2) (conspiracy to interfere with justice in federal courts), and the second clause of § 1985(3) (interference with federal elections) are not applicable here. These three categories relate to institutions and processes of the federal government/federal officers and are inapplicable. Thus, the court must determine whether the Dauvens have stated a cause of action under the second clause of § 1985(2), for a conspiracy to interfere with justice in the state court, or the first clause of § 1985(3), for a conspiracy to deny them equal protection of the laws.

Turning first to § 1985(3), this provision permits an action to be brought by one injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). In a line of cases beginning with *Griffin v. Breckenridge*, 403 U.S. 88 (1971), the Supreme Court has made clear that to state a claim under § 1985(3) a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and

8 - FINDINGS AND RECOMMENDATION

(3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin*, 403 U.S. at 102-03).

In *Griffin*, the Supreme held a § 1985(3) claim can reach private as well as public conspiracies that seek to deprive a class of equal protection of the laws or equal privileges under the laws. 403 U.S. at 101. Thus, African-American plaintiffs were permitted to use § 1985(3) to sue their racially motivated white attackers for violating their constitutional right to travel. *Id.* at 103, 106. Nevertheless, despite its application to private conspiracies, § 1985(3) was not intended to provide a federal remedy for "all tortious, conspiratorial interferences with the rights of others," or to be a "general federal tort law." *Id.* at 101-02. The Court emphasized that because § 1985(3) requires the "intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim. *Id.* at 102. The phrase "class-based invidiously discriminatory animus" would

> confine the authority of this law to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the animus and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section.

*Id.* at 100 (quoting Cong. Globe, 42d Cong., 1st Sess. App. 478 (1871) (Rep. Shellabarger)).

Subsequently, the Supreme Court limited its holding in *Griffin* to the first clause of § 1985(3) by determining the requirement for racial or class-based discrimination did not apply to conspiracies to intimidate witnesses in federal courts under the first clause of § 1985(2). *Kush*, 460 U.S. at 726. The Court noted that, beyond applying to the first clause of § 1985(3), "[t]here is no

suggestion [in *Griffin*] that its reasoning applies . . . to the portions of the statute that prohibit interference with federal officers, federal courts, or federal elections." *Id.* at 726.

As mentioned above, the second clause of § 1985(2) creates a federal right of action for damages against conspiracies which obstruct the due course of justice in any State or Territory with intent to deny equal protection. 42 U.S.C. § 1985(2). The Court in *Kush* held only that the first part of § 1985(2) does not require a showing of class-based animus, 460 U.S. at 726, and did not address whether the second part of § 1985(2) requires such a showing. The Ninth Circuit has determined, however, the "equal protection" language requires "an allegation of class-based animus for the statement of a claim under that clause." *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985) (*en banc*) (quoting statute); *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th cir. 1991) ("We have held, however, that a cognizable claim under the second part of § 1985(2) requires an allegation of a class-based, invidiously discriminatory animus." (quotations and citations omitted)).

Thus, under either the first clause of § 1985(3), or the second clause of § 1985(2), an allegation of membership to a protected class is required. The Dauvens do not allege they are members of a protected class who suffer from invidious discrimination, nor do they allege any defendant acted with class-based animus. Even construing their Amended Complaint liberally, there are no allegations of racial or class-based discrimination. Thus, the Dauvens are unable to state a cause of action under § 1985(3), or under the second clause of § 1985(2). Accordingly, Counts One, Two, and Three of the Dauvens' Amended Complaint should be dismissed, with prejudice.[2]

The court now turns to the requests for dismissal specific to each defendant's motion.

---

[2]To the extent § 1985(3), or the second clause of § 1985(2), reaches any class-based animus other than race, the case law is clear it applies only to animus based upon immutable characteristics for which the members of the class have no responsibility.

II.    Counts Four, Five, Six, Seven, and Eight - 42 U.S.C. § 1983

   A.    *Counts Four, Five, and Six – J.R. Oleyar*

In Count Four – Conspiracy to Violate Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only J.R. Oleyar, and allege Oleyar conspired with Joanne Balkovic (deceased) to accuse the Dauvens of elder abuse of Joanne Balkovic, including "financial exploitation; forcing their way into her home, moving her things; refusing to pay rent; refusing to move and verbal and emotional abuse by [] Barbara Dauven . . . ." (Am. Compl. ¶ 163.)  These accusations by Oleyar, against the Dauvens, resulted in the issuance of a Temporary Restraining Order, forcing the Dauvens to vacate their home and lose personal property. (Am. Compl. ¶¶ 164-65.)

In Count Five – Violation of Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only J.R. Oleyar, and allege Oleyar deprived them of their rights under the Fourteenth Amendment, including: "1) the right to be free from unreasonable searches; 2) the right not to be deprived of property without due process of law; 3) the right to be free from intrusion into private affairs (contracts and agreements) by a person acting under color of State Law; 4) the right to be from unwarranted State government action; and 5) the right to just compensation for taking property." (Am. Compl. ¶ 169.)

In Count Six – Violation of Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only J.R. Oleyar, and allege Oleyar deprived them of property without due process of law when, among other things, he failed to investigate the claims  by and against the Dauvens and allowed Joanne Balkovic to exercise dominion and control over the Dauvens' property. (Am. Compl. ¶ 173.)

The allegations against Oleyar involve his role as an Investigator with Oregon DHS's Adult Protective Services and his investigation into the Dauvens' elderly neighbor's claims of elder abuse

against the Dauvens. (Am. Compl. ¶¶ 19-27.) On June 11, 2011, Oleyar and an officer with the Clackamas County Sheriff's Office visited the residence of the Dauvens' elderly neighbor, Joanne Balkovic. (Am. Compl. ¶¶ 85-86.) Joanne Balkovic informed Oleyar "she was afraid of the Dauvens" and they "had forced their way into her home and were not paying rent." (Am. Compl. ¶ 86.) On June 17, 2011, Oleyar told Ted Dauven to move out of Joanne Balkovic's home due to their financial abuse of her. (Am. Compl. ¶ 88.) The Dauvens allege Oleyar stated he would help them find a place to live but, ultimately, did not do so. (Am. Compl. ¶ 89.) On June 21, 2011, Barbara Dauven called Oleyar, who denied promising housing location assistance to the Dauvens and, additionally, accused Barbara Dauven of financial abuse. (Am. Compl. ¶¶ 93-94.) Barbara Dauven then threatened to sue Oleyar. (Am. Compl. ¶¶ 93-94.) On that same day, the Dauvens entered into a temporary rental agreement with Joanne Balkovic and allegedly paid her one hundred ($100) dollars. (Am. Compl. ¶ 95.) On June 22, 2011, the Dauvens were evicted from the property by three Sheriff's deputies, accompanied by Oleyar. (Am. Compl. ¶ 96.) The Dauvens allege Oleyar told them he pursued the eviction due to their poor treatment of him and their threatened lawsuit against him. (Am. Compl. ¶ 97.) According to the Dauvens, Oleyar, as well as one of the Sheriff's deputies, informed the Dauvens their lawsuits against U.S. Bank and George Fox University were the reason action was taken against them. (Am. Compl. ¶ 97.)

The petition hearing occurred on August 12, 2011. (Am. Compl. ¶ 108.) According to the Dauvens, Joanne Balkovic recanted on the stand, saying she had invited the Dauvens into her home. (Am. Compl. ¶ 109.) The Dauvens allege Joanne Balkovic further testified Oleyar made her sign the elder abuse petitions. (Am. Compl. ¶ 110.) The Dauvens claim Joanne Balkovic perjured herself

on the stand and Oleyar perjured himself in the elder abuse petitions. (Am. Compl. ¶¶ 104, 111.) The petitions were ultimately dismissed by the court. (Am. Compl. ¶ 111.) The Dauvens contend the purpose behind these petitions was to use them in future court cases to "discredit and defame them." (Am. Compl. ¶ 113.)

As set forth above, the Dauvens allege three claims against Oleyar pursuant to 42 U.S.C. § 1983, including one claim for a conspiracy to violate the Dauvens' civil rights. Oleyar moves to dismiss all of these claims on the ground he is entitled to absolute immunity for his testimony, even if it was perjured. In addition, Oleyar insists the Eleventh Amendment bars the Dauvens' claims against him seeking damages for conduct taken in his official capacity. Further, Oleyar contends two of the three § 1983 claims must be dismissed because the Dauvens do not allege any constitutional violation.

The court considers first Oleyar's contention he is entitled to Eleventh Amendment immunity from the Dauvens' § 1983 claims against him. The Eleventh Amendment provides the judicial power of the United States shall not extend to any suit in law or equity commenced or prosecuted against a state.[3] U.S. Const. amend. XI. The Eleventh Amendment bars citizens from bringing suit in federal court against a state or state entity unless Congress has abrogated the state's immunity, or the state has expressly consented to waive it. *Alabama v. Pug*, 438 U.S. 781, 782 (1978). Supplemental jurisdiction is also limited by the bar imposed by the Eleventh Amendment. *Raygor*

---

[3]The Eleventh Amendment to the United States Constitution provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State.

U.S. Const. amend. XI.

13 - FINDINGS AND RECOMMENDATION

*v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 540-42 (2002). Oregon has neither consented to suit by explicitly waiving its Eleventh Amendment immunity, nor has Congress unilaterally abrogated Oregon's Eleventh Amendment Immunity in this instance. *See, e.g., Rounds v. Oregon State Bd. of Higher Ed.*, 166 F.3d 1032, 1035-36 (9th Cir. 1999).

It is well-established that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which "is no different from a suit against the State itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989). Because a suit against a state official in his official capacity is considered the equivalent of a suit against the State itself, suits for money damages against state officials are barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.").

As mentioned above, the Dauvens' action against the Oleyar is grounded in § 1983, and seeks only monetary relief for the alleged violations. Moreover, the Dauvens brought suit against Oleyar for conduct taken in his official capacity. (*See* Am. Compl. ¶ 163 ("Defendant J.R. Oleyar, under color of title as an agent, employee, and investigator fo the State of Oregon Agency on Aging and Seniors and People with Disabilities . . . ."); Am. Compl. ¶ 173 ("Defendant J.R. Oleyar, under the color of title as an Investigator for Adult and Disabilities Protective Services for the State of Oregon . . . .").) The Dauvens have not demonstrated the State waived immunity, nor has Congress abrogated the State's immunity, for the claims the dauvens assert here. Thus, the Eleventh Amendment bars the Dauvens' § 1983 claims against Oleyar seeking monetary damages arising from

actions taken in his official capacity.  Because Oleyar is entitled to Eleventh Amendment immunity for the conduct alleged in the Dauvens' Amended Complaint, the court need not reach Oleyar's other grounds for dismissal.  Accordingly, Counts Four, Five and Six of the Dauvens' Amended Complaint should be dismissed, with prejudice.

   *B. Counts Seven and Eight - Kingsley W. Click*

In Count Seven – Violation of Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only Kingsley W. Click, and allege Click's conduct with regard to the FED process deprived them of their rights under the Fourth, Fifth and Fourteenth Amendments including: "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) unwarranted denial of residence, resulting in homelessness without due process of law; e) the right to just compensation for taking of property."  (Am. Compl. ¶¶ 177-78.)

In Count Eight – Violation of Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only Kingsley W. Click, and allege Click failed to implement appropriate policies, customs and practices in her capacity as Oregon State Court Administrator, thereby depriving them of their rights under the Fourth, Fifth and Fourteenth Amendments.  (Am. Compl. ¶¶ 185, 187.)

The allegations against Click involve her role as State Court Administrator and attribute to Click the errors her employees allegedly committed which, according to the Dauvens, resulted in an Order dismissing the Dauvens' Petition for Review in the Oregon Supreme Court.  (Am. Compl. ¶ 66.)  The Dauvens claim they received a letter from the Oregon Supreme Court on February 25, 2011, notifying them of deficiencies in their Petition for Review.  (Am. Compl. ¶ 70(b).)  The

envelope containing that letter was apparently postmarked with the date of February 24, 2011, but the letter itself was dated January 24, 2011. (Am. Compl. ¶ 70(c).) Thereafter, on March 3, 2011, the Dauvens received an Order of Dismissal regarding their Petition for Review. (Am. Compl. ¶ 70(d).) The envelope containing that Order was apparently postmarked with the date of March 2, 2011, but the Order itself was dated February 23, 2011. (Am. Compl ¶ 70(d).) The Dauvens mailed letters to the State Court Administrator on March 5, 2011, and March 31, 2011, regarding the date errors. (Am. Compl. ¶ 70(e).) The Dauvens received a response on May 5, 2011, advising them to file a request for reconsideration. (Am. Compl. ¶ 70(f).) The envelope containing that response was apparently postmarked with the date of May 4, 2011, but the response itself was dated April 11, 2011. (Am. Compl. ¶ 70(f).) The Dauvens claim these errors were a conspiracy involving Click and the State of Oregon. (Am. Compl. ¶ 70(i).)

As set forth above, the Dauvens allege two claims against Click under 42 U.S.C. § 1983, for violations of their Fourth, Fifth and Fourteenth Amendment rights. Click moves to dismiss both of these on the ground they are barred by the statue of limitations. Alternatively, Click contends the Dauvens' § 1983 claims against her fail because under § 1983 Click cannot be held liable for the actions of her employees. In addition, Click insists the Eleventh Amendment bars the Dauvens' claims against her seeking damages for conduct taken in her official capacity.

While Click raises several grounds for dismissal the court considers first whether the Dauvens charges against Click are barred by the relevant limitations period. Although § 1983 provides a federal cause of action, the court looks to the law of the state in which the cause of action arose for the length of the statute of limitations. Typically, courts use the applicable state law period

for personal injury torts. *See Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985), *superceded by statute on other grounds as recognized by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-81 (2004); *see also Owens v. Okure*, 488 U.S. 235, 240-41 (1989). Under Oregon law, the relevant limitations period is two years. OR. REV. STAT. § 12.110(1); *see, e.g., Sain v. City of Bend*, 309 F.3d. 1134, 1139 (9th Cir. 2002); *Shepard v. City of Portland*, 829 F. Supp. 2d 940, 959 (D. Or. 2011) ("It is undisputed that claims made under section 1983 are subject to Oregon's general two year statute of limitations." (citing *Sain*, 309 F.3d at 1139)).

A careful review of the record reveals Click's last alleged act occurred on May 5, 2011. Specifically, with regard to Click's alleged wrongful acts, the Dauvens allege:

> e.      On March 5, 2011, the Dauvens mailed a certified letter to the State Court Administrator, relating the error, and requesting advice as how to proceed in the face of the Court's errors. Supporting documents were included, copies of the postmarked envelopes.   On March 31, having received no response from the March 5th correspondence, the Dauvens mailed a second letter.

> f.      No response was received from the State Court Administrator until May 5, 2011, the day before the trial on the second FED filed by U.S. Bank NA, as a result of the errant Judgment based on the errant dismissal the first FED. The letter from the Oregon State Court Clerk, "Gracie", while post marked May 4, 2011, was dated April 11, 2011, ignored the facts presented and advised the Dauvens to file a request for reconsideration.

(Am. Compl. ¶¶ 70(e) and (f).)

Thus, the last alleged wrongful act occurred on May 5, 2011. The Dauvens filed their original Complaint in this case on May 20, 2013, beyond the two-year limitations period, thus barring their claims against Click. Nor are the Dauvens able to rely on a continuing violation theory to avoid the limitations bar. The continuing violation theory does apply to § 1983 actions, and

allows plaintiffs to seek relief for events outside of the limitations period. Under a continuing

violation theory, however, the Dauvens must show either a system or practice of discrimination by

Click or "state facts sufficient . . . [to] support[] a determination that the alleged discriminatory acts

are related closely enough to constitute a continuing violation, and that one or more of the acts falls

within the limitations period." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). Moreover, the

Ninth Circuit is clear that a "mere continuing impact from past violations is not actionable." *Id.*

(citations and quotation omitted); *see also Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th

Cir. 1979) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which

the consequences of the acts became most painful."). The Dauvens' cause of action accrued on May

5, 2011, when they received the response from Click to file a request for reconsideration. The

continuing violation theory is inapplicable here because they fail to allege either a pattern or practice

of discrimination or a new violation occurring after May 5, 2011, and, within the limitations period.

Alternatively, even if the Dauvens could establish a continuing violation and spare this claim

from a limitations bar, Click cannot be liable under § 1983 for the conduct of her employees. *See*

*Ashcroft*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual actions,

has violated the Constitution.") Additionally, the Ninth Circuit has expressly stated: "supervisory

officials are not liable [under § 1983] for actions of subordinates on any theory of vicarious liability."

*Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir.1989). Thus, the Dauvens' claims against Click are

barred by the statute of limitations and/or they are unable to state a claim against Click based upon

a theory of *respondent superior*. Accordingly, Counts Seven and Eight of the Dauvens' Amended Complaint should be dismissed, with prejudice.[4]

III.     Count Nine – Wrongful Eviction; Count Thirteen – Conversion

In Count Nine – Wrongful Eviction, the Dauvens name only the Banks, and allege these defendants failed to provide them with "a reasonable and proper notice" prior to forcing them from their home, thereby, causing the Dauvens' loss of personal property and forcing them to inhabit a "dangerous basement." (Am. Compl. ¶¶ 192, 195.)

In Count Thirteen – Conversion, the Dauvens again name only the Banks, and allege these defendants, as purported legal owners of the Thoma Road Property, wrongfully evicted them from their home, forcing the Dauvens to leave most of their possessions. In addition, the Banks failed to allow them reasonable access to remove their possessions and permitted third parties to convert and damage the Dauvens' personal property. (Am. Compl. ¶¶ 216-17.)

In August 2006, the Dauvens rented property located at 13120 Thoma Road, Lake Oswego, Oregon ("Property"), from a third party. (Amended Compl. ¶ 44.) At some point in 2008, the third party defaulted on the loan, which resulted in the foreclosure process starting on or around October 1, 2008. (Am. Compl. ¶ 47.) On August 7, 2009, Janaya Carter, an attorney representing U.S. Bank, sent the Dauvens a letter notifying them that, as a result of the foreclosure, they had 90-days to vacate the Property ("90-Day Notice"), or she would commence eviction proceedings against them. (Am. Compl.¶ 52.) On November 6, 2009, however, the Dauvens responded by letter to the 90-Day

---

[4] The court need not reach Click's third ground for dismissal, Eleventh Amendment immunity.

Notice and informed Carter they wanted to purchase the Property, and they believed the 90-Day Notice was false. (Am. Compl. at ¶ 53.) The Dauvens did not vacate the Property as requested. (Am. Compl. ¶¶ 54-69.)

The Dauvens contested the eviction, through motion practice and at trial. (Am. Compl. ¶¶ 58, 60-62.) Approximately four years ago, on December 29, 2009, in the first forcible entry detainer ("FED"), the Clackamas County Circuit Court entered a General Judgment requiring the Dauvens to relinquish their possession of the Property to its owner, U.S. Bank. (Am. Compl. ¶¶ 62- 63.) The Dauvens appealed the first FED Judgment to the Oregon Court of Appeals, and subsequently to the Oregon Supreme Court. (Am. Compl. ¶¶ 63, 65, 70.) The Oregon Supreme Court denied the Dauvens' Petition for Review. (Am. Compl. ¶ 66.)

The Dauvens failed to vacate the Property and, approximately 16 months later, on April 12, 2011, U.S. Bank filed a second FED. (Am. Compl. ¶ 66.) On May 16, 2011, the Clackamas County Circuit Court again entered a General Judgment in favor of U.S. Bank for a money award and restitution of the Property. (Am. Compl. ¶ 69.) On July 6, 2011, the Dauvens filed an Emergency Ex Parte Motion to Stop Execution on the FED Judgment with the Clackamas County Circuit Court, which that court denied the next day. (Am. Compl. ¶ 69; Kristen L. Tranetzki Decl. Ex. 1, August 19, 2013.) The Dauvens also appealed the Second FED Judgment on or about April 6, 2012, Court of Appeals of the State of Oregon, Case No. A148634. (Am. Compl. ¶ 70.) On or about October 16, 2012, the Oregon Court of Appeals affirmed the Second FED Judgment without opinion. (Tranetzki Decl. Ex. 2.)

On December 16, 2009, while the first FED action was proceeding, the Dauvens, proceeding *pro se*, filed an action in this court against the Banks, *Dauven v. U.S. Bank National Association*,

3:09-cv-1471-PK (D. Or. Dec. 16, 2009). (*Am. Compl.* ¶ 59.) By this action, the Dauvens attempted to enjoin the state court eviction proceedings, but the federal court denied their request. The Dauvens also brought claims for abuse of process, willful and wanton misconduct, trespass, outrageous conduct, battery, and false imprisonment, and argued the Banks were vicariously liable for the conduct of an unidentified man who allegedly completed a property inspection to determine the Property's occupancy status.

The court issued an Order to Show Cause, because the original Complaint failed to properly allege subject matter jurisdiction. On January 20, 2010, plaintiffs filed an Amended Complaint. On motions by the Banks, Judge Papak issued a Findings and Recommendation ("F&R) on June 7, 2010, granting the Banks' motion to strike the Dauvens' request for attorney's fees, and dismissing the Dauvens Amended Complaint for lack of subject matter jurisdiction and failure to state any claim for relief. Judge Papak did, however, recommend the Dauvens be granted leave to amend. (Tranetzki Decl. Ex. 3.)

On July 30, 2010, the Dauvens filed a Second Amended Complaint. Again, on motions by the Banks, Judge Papak issued a second F&R on November 8, 2010, granting in part and denying in part the Banks' motion to dismiss. (Tranetzki Decl. Ex. 4.) The court granted the Banks' motion for lack of subject matter jurisdiction with leave to amend for the Dauvens to correct the defects in jurisdictional allegations. The court also granted, in part, and denied, in part, the Banks' motion for failure to state a claim. Relying in part on the doctrine of issue preclusion, the court dismissed, with prejudice, the claims for abuse of process, both claims for willful and wanton misconduct, outrageous conduct, and intentional infliction of emotional distress. This resulted in Barbara Dauven

and Christiana Dauven being dismissed from the case. Ted Dauven's claims for battery and false imprisonment were the only claims to survive the Banks' motion to dismiss.

On December 30, 2010, Ted Dauven filed a Third Amended Complaint. Upon the parties' conferral, Ted Dauven filed a corrected Third Amended Complaint on February 1, 2011, asserting claims for battery and false imprisonment, and correcting his jurisdictional pleading defects. On July 20, 2011, Ted Dauven and Barbara Dauven filed a motion for leave to amend a Fourth Amended Complaint.

Again, on motions by the Banks, Judge Papak issued a third F&R, on September 7, 2012, denying the Dauvens' motion to amend the Complaint and denying the Banks' motion for summary judgment. The Dauvens moved to recuse Judge Hernandez, who was assigned to review the three F&Rs issued by Judge Papak, and the Banks moved to supplement the record. On November 7, 2012, Judge Hernandez denied the recusal motion, adopted Magistrate Papak's three F&Rs with respect to the denial of leave to amend, and granted the Banks' motion to supplement the record, and granted summary judgment in favor of the Banks.

Presently, the Banks filed a Motion to Dismiss Complaint Pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6), and move to dismiss the wrongful eviction and conversion claims on the grounds they are barred by issue preclusion or, alternatively, by claim preclusion. Additionally, the Banks contend the wrongful eviction claim is barred by the statute of limitations.

A.    *Wrongful Eviction*

As mentioned above, the Banks seek dismissal of the wrongful eviction claim on the grounds it is barred by issue preclusion and/or claim preclusion. The Banks contend the Dauvens "have

repeatedly – and unsuccessfully – challenged the 2011 eviction proceedings." (Banks' Mem. Dismiss 9.) According to the Banks, "[t]he [c]ourt has already ruled that the eviction was valid, and that plaintiffs are not entitled to receive from the Banking Defendants any damages stemming from the valid eviction. In fact, plaintiffs were ordered to pay damages to U.S. Bank." (Banks' Mem. Dismiss 9.) As such, the Banks argue the Dauvens are barred from relitigating the issues raised in this litigation.

In Oregon, wrongful eviction is an actionable tort, requiring plaintiff to show an improper ouster from a possessory interest in property. *See generally STK Enterprises, Inc. V. Crusader Ins. Co.*, 171 Or. App. 9, 13-15 (2000) (wrongful eviction in the context of personal injury coverage).

The court considers first the Banks' contention that claim preclusion bars the Dauvens' wrongful eviction claim in this action. Claim preclusion, also known as *res judicata*, prohibits a party from relitigating the same claim or defense against the same opponent. *Drews v. EBI Companies*, 310 Or. 134, 140 (1990). A claim is barred by res judicata if the earlier litigation: (1) concerned the same claim as the current action; (2) reached a final judgment on the merits; and (3) involved the same parties. *Communications Telesystems Int'l v. Calif. Pub. Util.*, 196 F.3d 1011, 1017 (9th Cir. 1999). The doctrine bars relitigation not only of the claim that was litigated in the prior action, but also "any ground or theory of relief that the party could have litigated" in the prior action. *G.B. v. Morey,* 229 Or. App. 605, 608 (2009).

A "claim" is "defined broadly as a group of facts which entitle the plaintiff to relief." *Id.* In deciding whether a group of facts is part of the same "claim," Oregon courts "inquire whether the transactions were related in time, space, origin, or motivation, and whether they form a convenient

unit, as well as whether they are substantially of the same sort or similarly motivated." *Id.* at 608-09.

Claim preclusion also applies to parties in "privity" with the parties to the prior action. *Bloomfield v. Weakland*, 339 Or. 504, 510-11 (2005); *Lettenmaier v. Federal Home Loan Mortgage Corporation*, No. 03:11-cv-156-HZ, 2011 WL 1938166, at *8 (D. Or. May 20, 2011) (*accord*). Among those in privity with parties to a prior action include "those whose interests are represented by a party to the [prior] action." *Secor Invs., LLC v. Anderegg*, 188 Or. App. 154, 167 (2003).

Applying the relevant claim preclusion factors, the court finds the Dauvens' wrongful eviction claim was litigated or could have been litigated in the prior FED proceedings. Indeed, it is undisputed the Dauvens vigorously contested their eviction from the Property over the course of multiple state court proceedings. Certainly, the Dauvens could have challenged the sufficiency of the 90-day notice, as well as any other defense, in opposition to the Banks' efforts to remove them from the Property. Moreover, a final judgment on the merits was reached in the FED cases. In Oregon, a circuit court's judgment in an FED proceeding is entitled to preclusive effect in a subsequent proceeding. *Lettenmaier*, 2011 WL 1938166, at *7; *Schmidt v. Hart*, 237 Or. App. 412, 420 (2010) ("A circuit court's findings in the context of an FED proceeding are entitled to preclusive effect"; because, in the FED proceeding, plaintiff was entitled to present defenses related to the issue of possession, she could not raise claims in separate, subsequent proceeding); *see also Carter v. Ricker*, 241 Or. 342, 345 (1965) (determination in FED matter that no representation was made regarding term of a lease was preclusive in subsequent action alleging that the representation constituted fraud). Finally, there can be no dispute the FED actions and the present litigation involve the same parties. U.S. Bank has been a party to all of the proceedings, and Wells Fargo, as the

servicer for the loan, is in privity and afforded the claim preclusion defense. *See Buckland v. MERS Mortgage Registration Systems, Inc.,* No. 01:11-cv-03053-CL, at 5-6 (D. Or. May 17, 2011) (ECF Docket Entry No. 16) (MERS and loan servicers are merely agents for the owner of the loan at issue, and, therefore, are in privity with the owner for purposes of *res judicata*).

In sum, the Dauvens' wrongful eviction claim is a renewed challenge to the two FED actions initiated by the Banks to remove the Dauvens from the Thoma Property; the Dauvens attempt once again to re-litigate issues raised in those state proceedings. Specifically, the Dauvens challenge the 90-day notice as "fraudulent" and "legally insufficient," and contend the Banks lacked both "proper jurisdiction" and "legal ownership" in the FED action. (Am. Compl. ¶¶ 191, 216.) There is no question the Dauvens' wrongful eviction claim was or could have been raised in their prior state court actions that resulted in Judgments against them. In fact, the Dauvens concede they argued against the validity of the eviction in the FED proceedings in the Clackamas County Circuit Court. (Am. Compl. ¶¶ 58, 62; *see also* Pls.' Resp. 2 ("Since 2009, Plaintiffs have consistently maintained that Defendants were involved in fraudulent, illegal activities, and that the Oregon State Courts, particularly with reference to FED's, could not be relied upon, due to the undue influence of the Banks and the lowly status of renters and Pro Se litigants."); Pls.' Resp. 9 ("Most of the above facts regarding Defendants' lack of standing were clearly presented in the Clackamas County Court, the District Court, the Oregon Appellate and Supreme Court.").) The Dauvens further admit the Clackamas County Circuit Court found in favor of U.S. Bank, validated the 90-day notice, established that the title of the Property belongs to U.S. Bank, and ordered the Dauvens to vacate the Property. (Am. Compl. ¶¶ 66, 69.) As such, the Dauvens' present action which again challenges the

sufficiency of the 90-day notice and legal ownership is barred. Accordingly, Count Nine of the Dauvens' Amended Complaint is barred under the doctrine of claim preclusion and should be dismissed, with prejudice.

B.    Conversion

To succeed on a conversion claim under Oregon law, plaintiff must prove "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel." *Mustola v. Toddy*, 253 Or. 658, 663 (1969) (adopting the definition of conversion found in Restatement (Second) of Torts § 222A(1) (1965)); *accord Cron v. Zimmer*, 255 Or. App. 114, 128 (2013).

The Banks seek dismissal of the Dauvens' conversion claim on the ground it is barred by either issue or claim preclusion. As alleged, the Dauvens conversion claim arises from the Banks conduct occurring after the FED proceedings. As such, the FED litigation cannot provide a basis to "preclude" their claim for conversion here. Nevertheless, even under the most liberal of the relevant allegations, the Dauvens fail to state a claim for relief for conversion under Oregon law. For example, there are no allegations the Banks, at anytime, exercised dominion or control over the Dauvens' personal property. Rather, the Dauvens appear to challenge the process provided for removal of their personal effects following their eviction from the Property. Such a challenge does not state a claim for conversion. Accordingly, Count Thirteen of the Dauvens' Amended Complaint should be dismissed, without prejudice.

IV.    Count Ten - Conspiracy to Fraudulently Transfer; Count Eleven - Constructive Trust

In Count Ten - Conspiracy to Fraudulently Transfer, the Dauvens name Christina Stauffer, Elizabeth Balkovic Allan, and Theresa Balkovic, and allege these defendants, as beneficiaries of the

revocable Inter Vivo Robert and Joanne Balkovic Trust ("Balkovic Trust"), conspired with the Trustee of the Balkovic Trust to transfer assets from the Balkovic Trust to avoid claims the Dauvens had against Joanne Balkovic, including breach of contract, abuse of process, assumpsit, and conversion. (Am. Compl. ¶¶ 200-02.)

In Count Eleven - Constructive Trust, the Dauvens again name Christina Stauffer, Elizabeth Balkovic Allan, and Theresa Balkovic, and allege these defendants are in wrongful possession of their personal property and "are charged with the duty to convey the property and profits therefrom to said Plaintiffs immediately." (Am. Compl. ¶ 208.)

Christina Stauffer moves to dismiss all claims against her pursuant to Rule 12(b)(6) for failure to state a claim. The sole factual allegation against Christina Stauffer is she was a beneficiary of the Balkovic Trust and she conspired with the Trustee to fraudulently transfer assets to avoid the Dauvens' claims against the Balkovic Trust.

A.    *Fraudulent Transfer*

As mentioned above, the Dauvens allege Christina Stauffer, along with others, conspired with the Trustee of the Balkovic Trust to transfer assets from the Balkovic Trust to avoid claims the Dauvens had against Joanne Balkovic. Based upon this allegation, the Dauvens contend the named defendants, including Christina Stauffer, are liable for "conspiracy to fraudulently transfer." Christina Stauffer moves for dismissal of the Dauvens' conspiracy claim on the ground they fail to allege any overt acts in furtherance of a conspiracy to support their claim for conspiracy to fraudulently transfer. At this stage of the proceedings, the Dauvens must plead "enough facts" to state a theory of civil conspiracy "that is plausible on its face." *Bell Atlantic Corp.*, 550 U.S. at 570.

In Oregon, a civil conspiracy is "a combination of two or more persons" who, through "concerted action," intend to accomplish an unlawful purpose or to accomplish a lawful purpose through unlawful means. *Osborne v. Fadden*, 225 Or. App. 431, 437 (2009); *see also Bonds v. Landers*, 279 Or. 169, 174 (1977) ("[A] combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means."). A claim for civil conspiracy "is not a separate tort or basis for recovery but, rather, a theory of mutual agency under which a conspirator becomes jointly liable for the tortious conduct of his or her coconspirators." *Osborne*, 225 Or. App. at 437; *see also Bonds*, 279 Or. at 175 ("A civil conspiracy is not an independent tort, in the absence of a statute or unusual circumstances."). In Oregon, to establish joint liability under a civil conspiracy theory, plaintiffs must establish the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds with respect to the object or course of action; (4) one or more unlawful, overt acts; and (5) proximate damages. *Osborne*, 225 Or. App. at 437; *accord Morasch v. Hood*, 232 Or. App. 392, 402 (2009). Further, "[t]he primary purpose of a conspiracy must be to cause injury to another." *Bonds*, 279 Or. at 174. Thus, the Dauvens conspiracy claim is dependent upon a valid underlying predicate tort and satisfaction of the aforementioned elements, including an intent to harm.

The alleged tortious conduct is for a fraudulent transfer. Although not specifically cited by the Dauvens, the court presumes they rely upon Oregon's Uniform Fraudulent Transfer Act ("UFTA") as the legal basis for their wrongful conveyance claim. OR. REV. STAT. §§ 95.200-310. Under the UFTA, "plaintiff[s] can prove fraud in two ways: (1) that the transfer was made 'with actual intent to hinder, delay, or defraud any creditor[,]' . . . ; or (2) that the transfer constituted constructive fraud due to inadequate consideration for the property conveyed and the insolvency or

near insolvency of the debtor." *Doughty v. Birkholtz*, 156 Or. App. 89, 96 (1998) (citing §§ 95.230

and 95.240). Section 95.230 encompasses a debtor's transfers which are "fraudulent as to a creditor,

whether the creditor's claim arose before or after the transfer was made . . . ."

To establish a property transfer "is fraudulent as to a creditor" under § 95.230(1)(a), a

plaintiff must prove (1) a "debtor" made the transfer; (2) the creditor has a "claim" that "arose before

or after the transfer was made"; and (3) the debtor made the transfer "[w]ith actual intent to hinder,

delay, or defraud any creditor of the debtor[.]" The terms "creditor" and "debtor" are defined by

cross-reference. A creditor is "a person who has a claim against a debtor" and a debtor is "a person

against whom a creditor has a claim." OR. REV. STAT. §§ 95.200(4), (6). And, as noted, a "claim"

is described as a legal right to be paid, regardless of whether litigation or other formal proceedings

have been – or even will be – initiated. OR. REV. STAT. § 95.200(3).

Even accepting the Dauvens' allegations as true for the purposes of this motion, they are

unable to state a claim for civil conspiracy to fraudulently transfer. In fact, by their own allegations,

the Dauvens concede they were not able to sustain any claims against the alleged "debtor."

> 202.    Defendants conspired with the Trustee of the Balkovic Trust to fraudulently
> transfer assets from the Trust to Defendants to avoid any and all claims Plaintiffs had
> against Ms. Balkovic. As a consequence of the failure of the Trustee to notify
> Plaintiffs of the death of Ms. Balkovic, and the requirements for claims against the
> Trust, *Plaintiffs were prohibited from making said claims*, and Defendants have
> benefitted unfairly.

(Am. Compl. ¶ 202 (emphasis added).)

In addition, the Dauvens fail to allege other necessary elements of this claim. Specifically

there are no allegations: (1) of any overt acts in furtherance of the conspiracy; (2) that the purpose

of the conspiracy to transfer assets was to cause harm or injure them; or (3) the insolvency of the

debtor. Accordingly, under Oregon law, the Dauvens are unable to state a cognizable theory of civil conspiracy for fraudulent transfer and that claim should be dismissed, without prejudice.

        *B.*    *Constructive Trust*

The Dauvens appear to ask this court to impose a constructive trust on their personal property because certain named defendants, including Christina Stauffer, are "wrongfully in possession" of that property. A request for imposition of a constructive trust cannot stand on its own as a substantive claim, "but exists solely as an equitable remedy, available to divest an individual who has been unjustly enriched of property that he or she 'ought not, in equity and good conscience, hold and enjoy.'" *Tupper v. Roan*, 349 Or. 211, 219 (2010) (quoting *Marston v. Myers*, 217 Or. 498, 509 (1959)) (emphasis omitted).

The Dauvens fail to establish any legal basis for the court to find the named individuals are "wrongfully in possession" of the Dauvens' personal property and, consequently, the court has no authority upon which to order the equitable remedy of constructive trust. Accordingly, Count Eleven of the Dauvens' Amended Complaint should be dismissed, without prejudice.

V.    Count Twelve - Violation of Civil Rights, 14th Amendment

In Count Twelve - Violation of Civil Rights, 14th Amendment, the Dauvens name only Randall Stauffer, and allege Randall Stauffer, as Executor of the Estate of Joanne Balkovic, had a duty to inventory the property in the Balkovic estate and determine ownership. The Dauvens allege Randall Stauffer's failure to do so resulted in Randall Stauffer deliberately withholding their personal property in violation of the Fourteenth Amendment. (Am. Compl. ¶¶ 211-13.)

Randall Stauffer moves to dismiss this claim because there are no allegations he was entwined with state or local government such that he, in effect, became a state actor. A plaintiff

30 - FINDINGS AND RECOMMENDATION

asserting a claim for relief under 42 U.S.C. § 1983 must allege a factual basis that satisfies the following factors: (1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a person (4) acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

The Dauvens do not allege Randall Stauffer was entwined with state actors, conspired with state actors, or that his challenged conduct is attributable to the state. Even assuming as true all of the allegations in the Amended Complaint, none of facts alleged by the Dauvens about Randall Stauffer's conduct constitute state action, as a matter of law. Thus, the Dauvens' are precluded from asserting a § 1983 claim against Randall Stauffer because he is a private party and not a person action under color of state law. *See Shah v. MyLife.Com, Inc.*, 3:12-cv-1592-ST, 2012 WL 4863696, at *4 (D. Or. Sept. 21, 2012) (plaintiff's § 1983 claim dismissed because all defendants were private parties); *see also Murawski v. Pataki*, 514 F. Supp. 2d 577 (S.D.N.Y. 2007) (dismissing claims by independent party nominee for governor against Internet service provider and separate political Web site where both defendants were private actors and no state action was alleged); *Hammer v. Amazon.com*, 392 F. Supp. 2d 423 (E.D.N.Y. 2005) (dismissing claim by self-published author of book which received unfavorable review postings on online bookseller's Web site violated his First Amendment rights for failure to allege state action). Accordingly, Count Twelve of the Dauvens' Amended Complaint should be dismissed, with prejudice.

VI.    Leave to Amend

A pro se litigant must be given leave to amend his or her complaint unless it appears the deficiency cannot be cured by amendment. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). Viewing all allegations in the Amended Complaint as true and construing all inferences in the

31 - FINDINGS AND RECOMMENDATION

Dauvens' favor, this court concludes it has no jurisdiction over their claims asserted pursuant to 42 U.S.C. §§ 1983, 1985, and the deficiencies cannot be cured by amendment. Furthermore, the Dauvens' challenges to the FED action are barred by claim preclusion and, thus, amendment would be futile. The Dauvens' are, however, granted leave to amend their claims for conspiracy to fraudulently transfer, constructive trust, and conversion.

*Conclusion*

For the reasons set forth above:

(1)    Annie Meckley Tenneson's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #38) should be GRANTED;

(2)    Mary Margaret Weibel's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #40) should be GRANTED;

(3)    Randall Stauffer's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #52) should be GRANTED;

(4)    Christina Stauffer's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #54) should be GRANTED;

(5)    Ian Reekie and Reekie Properties, LLC's Amended Motion to Dismiss Rule 12(b)96) and Statute of Limitations (doc. #43) should be GRANTED;

(6)    U.S. Bancorp, U.S. Bank NA and Wells Fargo Bank NA's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (doc. #73) should be GRANTED;

(7)    U.S. Bancorp, U.S. Bank NA and Wells Fargo Bank NA's Request for Judicial Notice (doc. #75) is GRANTED; and

(8)    Kingsley W. Click and J.R. Oleyar's Motion to Dismiss (doc. #95) should be GRANTED;

(9)    Samuel Taylor V's Amended Motion to Dismiss (doc. #103) should be GRANTED;

(10)    State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (doc. #120) should be GRANTED;

(11)    Dauvens' Request for Judicial Notice (doc. #133) is GRANTED.

Accordingly, Counts One through Nine and Twelve of the Dauvens' Amended Complaint should be DISMISSED, with prejudice; and Counts Ten, Eleven, and Thirteen should be DISMISSED, without prejudice.

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 4, 2014. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this /9th day of March 2014

John V. Acosta
United States Magistrate Judge

33 - FINDINGS AND RECOMMENDATION