IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THEODORE (Ted) E. DAUVEN, BARBARA
G. DAUVEN, CHRISTIANA C. DAUVEN,

                 Plaintiffs,

           v.

U.S. BANCORP, U.S. BANK NATIONAL
ASSOCIATION, as Trustee for MASTR Asset
Backed Securities Trust, 2006-WMC2, WELLS
FARGO AND COMPANY, IAN REEKIE,
REEKIE PROPERTIES, LLC., STATE FARM
MUTUAL AUTOMOBILE INSURANCE CO.,
J.R. OLEYAR, DANIEL STAUFFER,
SHAWNA STAUFFER, RANDALL
STAUFFER, CHRISTINA STAUFFER,
ELIZABETH BALKOVIC ALLAN, TERESA
BALKOVIC, MARY MARGARET WEIBEL,
SAMUEL TAYLOR V., ANNIE MECKLEY
TENNESON, DENISE FRICKE, and
KINGSLEY W. CLICK,

                 Defendants.

3:13-cv-844-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

1 - FINDINGS AND RECOMMENDATION

*Pending Motions*

Theodore, Barbara, and Christina Dauven (collectively "Dauvens"), appearing *pro se*, filed a 62-page Second Amended Complaint naming fifteen defendants and asserting twelve claims — civil rights violations, pursuant to 42 U.S.C. §§ 1983 and 1985, and assorted state law violations. In their Second Amended Complaint the Dauvens detail events involving their former landlord, former neighbors, certain financial institutions, an insurance company, a real estate company and several other individuals who came into contact with the Dauvens over a period of years. The dispute focuses primarily on the Dauvens' eviction from a rental property, and the attendant loss of some of their personal effects in that process. The Dauvens seek, among other things, $11 million in compensatory damages, and $24 million in punitive damages as redress for the alleged wrongful actions.

With one exception, all defendants who were properly served move to dismiss the respective claims against them.[1] For the reasons set forth below, defendants' motions should be granted and the Dauvens' Second Amended Complaint should be dismissed.

*Legal Standard*

A well-pleaded complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A federal claimant is not required to detail all factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right

---

[1]Elizabeth Balkovic Allan was served but has not entered an appearance. Daniel Stauffer, Shawna Stauffer and Teresa Balkovic have not been served.

2 - FINDINGS AND RECOMMENDATION

to relief above a speculative level." *Id.* While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, a plaintiff must set forth a plausible claim for relief, a possible claim for relief will not do. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

*Discussion*

In their Second Amended Complaint the Dauvens assert twelve different claims under both federal and state laws. As stated above, all properly served defendants, except Elizabeth Balkovic Allan, filed a motion to dismiss, eight motions in all. As explained below, for reasons of judicial economy, the court will rule on the motions only with respect to the Dauvens' federal claims under § 1985 and § 1983.

I.      Counts One, Two, and Three - 42 U.S.C. § 1985(2)

In Count One – Conspiracy to Convert Property, 42 U.S.C. § 1985(2) – the Dauvens name all defendants and allege defendants conspired to convert their personal property in violation of their constitutional right to ownership of such property. (Second Am. Compl. ¶¶ 142-47.)

In Count Two – Conspiracy to Defame, 42 U.S.C. § 1985(2) – the Dauvens name all defendants and allege defendants conspired to defame them, particularly Barbara Dauven, by "false accusations of severe emotional and financial and verbal abuse of Joanne Balkovic. . . ." (Second Am. Compl. ¶¶ 148-157.)

In Count Three – Conspiracy to Obstruct Justice, 42 U.S.C. § 1985(2) – the Dauvens name all defendants and allege defendants conspired to violate their due process and equal protection rights by interfering with the Dauvens' attempts to enforce those constitutional privileges.  (Second Am. Compl. ¶¶ 158-163.)

With one exception, all properly served defendants named in these three counts seek dismissal of the Dauvens' § 1985 claims under Rule 12(b)(6) for failure to state a claim.  Among other challenges, Annie Meckley Tenneson, Mary Margaret Weibel, and Samuel Taylor contend the Dauvens are unable to demonstrate they are members of a protected class for purposes of § 1985(2). Additionally, those three individuals argue the Dauvens fail to include any new allegations with respect to their status as members of a protected class.  Consequently, the Second Amended Complaint contains the same deficiencies as the previously dismissed Amended Complaint.  *See Theodore E. Dauven, et al. v. U.S. Bancorp, et al.*, No. 3:13-cv-00844-AC (D. Or. June 30, 2014) (Dauvens must allege they are members of a protected class who suffer invidious discrimination or that individual defendant acted with class-based animus).  Ian Reekie and Reekie Properties, LLC (collectively "Reekie defendants") request dismissal of the three § 1985(2) claims filed against them on the ground the Dauvens fail to state claims under § 1985(2) because there are no allegations of race or class-based animus.  Alternatively, these defendants contend the Dauvens' claims against them are barred by the statute of limitations.  Randall and Christina Stauffer (collectively "Stauffers") seek dismissal of the § 1985(2) claims against them on the ground the Dauvens do not allege either race or class-based animus.  U.S. Bancorp, U.S. Bank NA and Wells Fargo Bank NA (collectively "Banks") make several challenges to the Dauvens' § 1985(2) claims, including a failure to comply with the heightened pleading requirements of Rule 9 of the Federal Rules of Civil

4 - FINDINGS AND RECOMMENDATION

Procedure, which requires particularized allegations of a defendant's specific involvement in a conspiracy. Additionally, the Banks contend the § 1985(2) claim must be dismissed for failure to allege either race or class-based animus. J.R. Oleyar moves to dismiss these claims on the ground he is entitled to absolute immunity; the Eleventh Amendment bars the Dauvens' claims against him seeking damages for conduct taken in his official capacity; and, there are no allegations of race of class-based animus, which is necessary to state a claim under § 1985(2).

Section 1985 contains five discrete substantive clauses. *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983) ("As now codified in § 1985, the long paragraph is divided into three subsections. One of the five classes of prohibited conspiracy is proscribed by § 1985(1), two by § 1985(2), and two by § 1985(3).") In their Second Amended Complaint, and in their Response to the numerous motions to dismiss the three § 1985 counts, the Dauvens clarify that they bring all three § 1985 claim under the first clause of § 1985(2). (Second Am. Compl. ¶ 8; Pls.' Resp. 2.) That provision prohibits a conspiracy to obstruct justice in the federal courts, or to intimidate a party, witness or juror in connection therewith. 42 U.S.C. § 1985(2). Specifically, the first clause of § 1985(2) provides a cause of action if:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror . . . .

*Id.* The Dauvens are correct that in *Kush*, the Supreme Court determined the requirement for racial or class-based discrimination did not apply to conspiracies to intimidate witnesses in federal courts

5 - FINDINGS AND RECOMMENDATION

under the first clause of § 1985(2). *Kush*, 460 U.S. at 726. Thus, the defendants' collectively request to dismiss the first three Counts of the Dauvens's Second Amended Complaint on the ground the Dauvens failed to alleged any race or class-based animus should be denied. Nevertheless, all defendants argue the Dauvens failed to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As such, the court will consider whether the Second Amended Complaint satisfies the pleading requirements of *Twombly and Iqbal* with respect to the Dauvens' § 1985(2) allegations.

The first clause of § 1985(2) concerns "conspiracies to interfere with justice in the federal courts[.]" *Bretz v. Kelman*, 773 F.2d 1026, 1028 (9th Cir. 1985). The wrong at which § 1985(2) is directed is intimidation or retaliation against witnesses in federal-court proceedings. *Haddle v. Garrison*, 525 U.S. 121, 125 (1998). The terms "injured in his person or property" define the harm a victim may suffer as a result of the conspiracy to intimidate or retaliate. *Id.*; *see also Portman v. County of Santa Clara*, 995 F.2d 898, 908-09 (9th Cir. 1993) (claims under the first clause of § 1985(2) require a showing of denial of access to the federal courts). To state a claim under that clause, a plaintiff must allege facts to show: "(1) a conspiracy by the defendants; (2) to injure a party or witness in his or her person or property; (3) because he or she attended federal court or testified in any matter pending in federal court; (4) resulting in injury or damages to the plaintiff." *Portman*, 995 F.2d at 909.

As a threshold matter, the Dauvens allege in their Second Amended Complaint that defendants conspired to deprive them "of their personal property, extremely significant personal, irreplaceable property of a lifetime, and property related to their right to seek redress in 2 U.S. District Court cases, as well as to conceal evidence regarding the conspiracy . . . ." (Second Am. Compl. ¶ 145.) The court is unconvinced that such bare and conclusory allegations satisfy the

6 - FINDINGS AND RECOMMENDATION

plausibility requirement articulated in *Twombly* and *Iqbal*. Nevertheless, if the Dauvens can set forth sufficient particularized allegations of a conspiracy, the court will assume *only* for purposes of this motion that they have stated a plausible claim for relief under the first clause of § 1985(2).

By its express terms, section 1985(2) applies only to conspiracies. In the Ninth Circuit, conspiracy claims are subject to a heightened pleading standard. To survive a motion to dismiss a conspiracy allegation requires more than conclusory accusations that defendants conspired to deprive plaintiffs of their civil rights. Simply put, bare allegations that one defendant "conspired" with another are insufficient. *See Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997) ("The heightened pleading standard must be met in cases in which the subjective intent of the defendant is an element of the claim.").[2]  Rather, "[t]o state a claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir.1989). Plaintiffs may meet the heightened pleading standard by alleging "which defendants conspired, how they conspired and now the conspiracy led to a deprivation of his constitutional rights . . . ." *Harris*, 126 F.3d at 1196; *see also Burns*, 883 F.2d at 821 (To state a claim under § 1985(2), "plaintiff must state specific facts to support the existence of the claimed conspiracy."); *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (To be actionable, the conspiracy must result in overt acts, done in furtherance

---

[2]While some heightened pleading standards have been rejected, *see, e.g. Galbraith v. County of Santa Clara*, 307 F.3d 1119. 1125-26 (9th Cir. 2002); *Swierkiewitz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002), the heightened pleading standard as applied to conspiracy cases still appears to be the law in the Ninth Circuit. *See Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) ("The plaintiff must state specific facts to support the existence of the claimed conspiracy." (quotations and citation omitted). Although the court in *Olsen* dedicated but one paragraph to the subject, it was decided two years after *Galbraith* and, thus is the law of the Ninth Circuit.

of the conspiracy, that are both the cause in fact and proximate cause of plaintiffs' injuries.). Conclusory allegations that fail to assert particular overt conduct in violation of a plaintiff's rights or facts tending to show agreement or concerted action amongst defendants are insufficient. Simply put, defendants must be informed of the nature and purpose of the alleged conspiracy.

Here, the Second Amended Complaint is devoid of *any* specific factual allegations regarding the alleged conspiracies to convert property (Count One), to defame the Dauvens (Count Two), and to obstruct justice (Count Three). With respect to the time period for the "conspiracies" the Dauvens allege "[a]t some time prior to May 21, 2011, and at various times thereafter . . . ." (Second Am. Compl. ¶¶ 144, 151 ("May 20, 2011"), 155 ("May 20, 2011").) Prior to May 21, 2011, and thereafter is not a time period, it includes all time. Such an all-inclusive statement fails to provide defendants with fair notice or allow them a meaningful opportunity to challenge the time frame based upon the statute of limitations or some other preclusive defense.

Next, the Dauvens claim all defendants, including a previously dismissed defendant and unserved defendants, conspired on all three counts. (Second Am. Compl. ¶¶ 144, 151, 155 (boilerplate recitation of all defendants named in the litigation).) With respect to Count One, Conspiracy to Convert Property, the Dauvens claim all defendants:

> agreed among themselves to convert Plaintiffs' personal property, including keepsakes, clothing, furniture, art, books, music, kitchenware and appliances, food, tools, and items of great sentimental import; and files, documents, papers, video tapes, CD's, DVD's, Video/DVD burner, DVD player, printer, related to *Dauven* v. *U.S. Bank NA, et al.* and *Dauven* v. *George Fox University, et al.,* U.S. District Court cases, to impede, hinder, obstruct or defeat the due course of justice . . . .

(Second Am. Compl. ¶ 144.) By their allegations, the Dauvens do not explain the specific personal property necessary to the prosecution of their identified federal cases, *i.e.,* either kitchenware and

8 - FINDINGS AND RECOMMENDATION

appliances or documents and papers; the relevance of the specific item to the federal court proceeding; or how the absence of that specific item "impede[d], hinder[ed], obstruct[ed] or defeat[ed] the due course of justice." Moreover, the Dauvens do not allege a single overt act by defendants, individually or collectively, in furtherance of the purported conspiracy to convert their property. *See Caldeira v. County of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989) (§ 1985 conspiracy requires "an agreement or meeting of the minds by defendants to violate his constitutional rights"). These allegations are insufficient to inform defendants of the nature of the alleged conspiracy, and do not meet the pleading requirements of *Twombly* and *Iqbal*.

In Count Two, Conspiracy to Defame, the Dauvens state only that defendants acted: "to defame Plaintiffs, in particular, Plaintiff Barbara Dauven, by false accusations of severe emotional and financial and verbal abuse of Joanne Balkovic, to impede, hinder, obstruct, or defeat the due course of justice . . . ." (Pls.' Second Am. Compl. ¶ 151.) Once again, the Dauvens fail to set forth the details of this claim. In fact, the Dauvens do not set forth a single defamatory statement. Moreover, there are no allegations of when defendants conspires to defame the Dauvens, what overt acts were taken, and how defendants' alleged defamation of the Dauvens with respect to Ms. Balkovic "impede[d], hinder[ed], obstruct[ed], or defeat[ed] the due course of justice" with respect to a federal proceeding. These allegations are insufficient to inform defendants of the nature of the alleged conspiracy, and do not satisfy the pleading requirements of *Twombly* and *Iqbal*.

Lastly, in Count Three, Conspiracy to Obstruct Justice, the Dauvens charge defendants "did impede, hinder, obstruct, or defeat the due course of justice" by "adopting a specific mode of action." (Second Am. Compl. ¶ 159.) The allegations in Count Three are particularly deficient. It is not clear how these allegations relate to the interference with a proceeding in federal court. Further,

defendants are left to guess what overt acts they purportedly took in furtherance of the unidentified interference, when those acts were taken and the specific way in which those acts may have interfered with the Dauvens' rights to pursue their rights in federal court. The allegation "adopting a specific mode of action" does not inform the claims in anyway, even under the most liberal standard of construction. Once again the Dauvens have, as a matter of law, failed to state a plausible claim for relief.

In sum, with even the most liberal reading of the Dauvens' Second Amended Complaint, the court is simply unable to divine any details of the alleged conspiracies. The most that can be determined from the pleadings is that at some point in time all defendants purportedly agreed to: (1) make false statements about the Dauvens' relationship with Joanne Balkovic; and (2) keep unspecified property from the Dauvens that the Dauvens needed to pursue claims in other federal court proceedings. The Dauvens offer no specific facts to explain how they were hampered in presenting an effective case in federal court. *See David v. U.S.*, 820 F.2d 1038, 1040 (9th Cir. 1987) (allegations "under § 1985(2) will not suffice for a cause of action unless it can be shown the litigant was hampered in being able to present an effective case"). Such a recitation does not provide defendants a meaningful opportunity to respond to the § 1985(2) claims, nor do the allegations rise to the level of a constitutional violation. The allegations in the Dauven's Second Amended Complaint are insufficient to create a plausible inference that defendants conspired to deprive the Dauvens of their constitutional rights. Ninth Circuit precedent requires at a minimum that the Dauvens plead with particularity which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights. *See, e.g., Olsen v. Idaho State Bd. of Medicine,* 363 F.3d 916, 929 (9th Cir. 2004) ("plaintiff must state specific facts to support the

existence of the claimed conspiracy"); *Harris*, 126 F.3d at 1196 (complaint adequately alleges two overt acts). Instead, the Dauvens' allegation are nothing more than conclusory statements and do not provide the requisite factual specificity required to state a claim under § 1985.

The Dauvens are not permitted to use § 1985 as a mechanism to pursue satisfaction of their disagreements with Balkovic and other neighbors. *See Dauven, et al. v. U.S. Bancorp, et al.*, No. 3:13-cv-844-AC (D. Or. Oct. 8, 2013) (Dauvens dismiss defendant Denise Fricke because she apologized); *see also* Second Am. Compl. ¶ 72 ("Balkovic's consistent rudeness, attempting to bait Barbara Dauven, to anger her. . . . Balkovic continued to be extremely unpleasant.") Section 1985 derives from Section 2 of the Ku Klux Klan Act of 1871, which is also known as the Civil Rights Act of 1871. The official title was "An Act to enforce the provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes." The Act was passed in response to a rising tide of Klan terrorism against blacks and union sympathizers and was designed to proscribe conspiracies "having the object or effect of frustrating the constitutional operations of government through assaults on the person, property, and liberties of individuals." *See* Comment, *A Construction of Section 1985(c) in Light of its Original Purpose*, 46 U. CHI. L. REV. 402, 402-03 (1979); *see also District of Columbia v. Carter*, 409 U.S. 418, 425-26 (1973); *Civil Rights* 591 (Bernard Schwartz ed. 1970); Janet A. Barbiere, *Conspiracies to Obstruct Justice in the Federal Courts: Defining the Scope of Section 1985(2)*, 50 FORDHAM L. REV. 1210, 1210-1229 (1982). The legislative history and statutory language indicate Congress's focus with regard to the interference with legal proceedings provisions of § 1985 were unjust acquittals of Ku Klux Klan conspirators. There is no question the application of the first clause § 1985(2) has subsequently been extended beyond its original purpose, and covers other wrongful conduct with respect to proceedings in federal

courts. Regardless, the Dauvens' attempts to stretch § 1985(2) to cover the circumstances of this case lack support in Congressional intent and judicial precedent. Defendants' collective requests to dismiss Counts One, Two and Three of the Dauvens' Second Amended Complaint should be granted.

II.    <u>Counts Seven, Eight, and Nine - 42 U.S.C. § 1983</u>

In Count Seven – Conspiracy to Violate Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only J.R. Oleyar, and allege Oleyar "conspired with Joanne Balkovic, falsified facts and wrongfully accused, by means of Petitions against Plaintiffs Ted Dauven, Barbara Dauven, and Christiana Dauven (Plaintiffs being Seniors with a disabled, chronically ill daughter), of Elder Abuse of Ms. Balkovic." (Second Am. Compl. ¶ 189.) Among other conduct, the Dauvens accuse Oleyar of preparing "false and perjurious [sic] Petitions . . . ." (Second Am. Compl. ¶ 191.) These accusations by Oleyar against the Dauvens resulted in the issuance of a Temporary Restraining Order, forcing the Dauvens to vacate their home and lose personal property. (Second Am. Compl. ¶¶ 191-93.)

In Count Eight – Violation of Civil Rights, 42 U.S.C. § 1983 – the Dauvens name only J.R. Oleyar, and allege Oleyar deprived them of their rights under the Fourteenth Amendment, including: "1) the right to be free from unreasonable searches; 2) the right not to be deprived of property without due process of law; 3) the right to be free from intrusion into private affairs (contracts and agreements) by a person acting under color of State Law; 4) the right to be from unwarranted State government action; and 5) the right to just compensation for taking property." (Second Am. Compl. ¶ 198.)

In Count Nine – Violation of Civil Rights, 42 U.S.C. § 1983 (Deprivation of Property Without Due Process of Law) – the Dauvens name only J.R. Oleyar, and allege Oleyar deprived them

of property without due process of law when, among other things, he failed to investigate the claims by and against the Dauvens and allowed Joanne Balkovic to exercise dominion and control over the Dauvens' property.   (Second Am. Compl. ¶ 204.)  In addition, the Dauvens charge Oleyar with suborning perjury and retaliating against the Dauvens for their refusal "to show Oleyar deference." (Second Am. Compl. ¶ 204.)

The allegations against Oleyar arise from his role as an Investigator with Oregon DHS's Adult Protective Services and his investigation into the Dauvens' elderly neighbor's claims of elder abuse against the Dauvens.  On June 11, 2011, Oleyar and an officer with the Clackamas County Sheriff's Office visited the residence of the Dauvens' elderly neighbor, Joanne Balkovic.  (Second Am. Compl. ¶¶ 79-80.)  Joanne Balkovic informed Oleyar "she was afraid of the Dauvens" and they "had forced their way into her home and were not paying rent."  (Second Am. Compl. ¶ 80.)  On June 17, 2011, Oleyar told Ted Dauven to move out of Joanne Balkovic's home due to their financial abuse of her.  (Second Am. Compl. ¶ 82.)  The Dauvens allege Oleyar stated he would help them find a place to live but, ultimately, did not do so.  (Second Am. Compl. ¶ 82.)  On June 21, 2011, Barbara Dauven called Oleyar, who denied promising housing location assistance to the Dauvens and, additionally, accused Barbara Dauven of financial abuse.  (Second Am. Compl. ¶ 87.)  Barbara Dauven then threatened to take legal action against Oleyar if he continued "in evicting the Dauvens and making them homeless."  (Second Am. Compl. ¶ 88.)  On that same day, the Dauvens entered into a temporary rental agreement with Joanne Balkovic and allegedly paid her one hundred ($100) dollars.  (Second Am. Compl. ¶¶ 89, 190.)  On June 22, 2011, the Dauvens were evicted from the property by three Sheriff's deputies, accompanied by Oleyar.  (Second Am. Compl. ¶ 90.)  The Dauvens allege Oleyar told them he pursued the eviction due to their poor treatment of him and their

threatened lawsuit against him. (Second Am. Compl. ¶ 91.) According to the Dauvens, Oleyar, as well as one of the Sheriff's deputies, informed the Dauvens their lawsuits against U.S. Bank and George Fox University were the reason action was taken against them. (Am. Compl. ¶ 91.)

The petition hearing occurred on August 12, 2011. (Second Am. Compl. ¶ 102.) According to the Dauvens, Joanne Balkovic recanted on the stand, saying she had invited the Dauvens into her home. (Second Am. Compl. ¶¶ 102, 105-06.) The Dauvens allege Joanne Balkovic further testified Oleyar made her sign the elder abuse petitions. (Second Am. Compl. ¶ 107-08.) The Dauvens claim Joanne Balkovic perjured herself on the stand and Oleyar perjured himself in the elder abuse petitions. (Second Am. Compl. ¶¶ 106, 108.) The petitions were ultimately dismissed by the court. (Second Am. Compl. ¶ 107.) The Dauvens contend the purpose behind these petitions was to use them in future court cases to "discredit and defame them." (Second Am. Compl. ¶ 110.)

As set forth above, the Dauvens allege three claims against Oleyar pursuant to 42 U.S.C. § 1983, including one claim for a conspiracy to violate the Dauvens' civil rights. Oleyar moves to dismiss all of these claims on the ground he is entitled to absolute immunity for his testimony, even if it was perjured. In addition, Oleyar insists the Eleventh Amendment bars the Dauvens' claims against him seeking damages for conduct taken in his official capacity. Further, Oleyar contends all three § 1983 claims must be dismissed because the Dauvens do not allege any constitutional violation.

### A.    Absolute Immunity

Oleyar contends all of the Dauvens' § 1983 claims against him arise from allegations that Oleyar lied in the petitions for elder abuse and, further, he encouraged and Balkovic to lie at the hearing. According to Oleyar, even assuming these allegations are true, he is absolutely immune

from suit in this case. The Dauven do not appear to challenge Oleyar's characterization that the claims arise from the alleged perjuries but, instead argue Oleyar is not entitled to immunity when sued in his personal capacity. (Pls.' Resp. 5, 6.) While the Dauvens are correct the Eleventh Amendment does not bar federal or pendent state claims seeking damages against a state official acting personally, *see Pena v. Gardner*, 976 F.2d 469, 472-74 (9th Cir. 1992), the official sued in his personal capacity is still entitled to assert available defenses. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Read v. Haley*, No. 3:12-cv-2021-MO, 2013 WL 1562938, at *6 (D. Or. April 10, 2013) (defendants sued in their personal capacity are entitled to absolute immunity). Consequently, the court must determine whether Oleyar is entitled to absolute immunity from the Dauvens' § 1983 claims.

Federal law controls the question of immunity in cases where a plaintiff alleges a 42 U.S.C. § 1983 claim. *Martinez v. California,* 444 U.S. 277, 284 & n.8 (1980). Absolute immunity shields individuals from § 1983 liability if they perform a function that enjoyed absolute immunity at common law. *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003). It is only the specific function performed and not the role or title of the official that matters. *Id.* Officials acting in a prosecutorial or judicial role, or performing functions closely associated with the judicial process, are entitled to absolute immunity. *Id.* at 896-98. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

The § 1983 claims against Oleyar, and his asserted defense of absolute immunity, are controlled by the Ninth Circuit's decision in *Beltran v. Santa Clara County*, 514 F.3d 906 (9th Cir.

2008) (*en banc*).[3]  In *Beltran,* the Ninth Circuit restated the proposition that state actors are granted absolute immunity "only for those functions that are critical to the judicial process itself." 514 F.3d at 908 (quoting *Miller*, 335 F.3d at 896).  Moreover, the court in *Beltran* expressly overruled the Ninth Circuit's prior ruling in *Doe v. Lebbos*, 348 F.3d 820 (9th Cir. 2003), which held that a social worker was absolutely immune for her actions in investigating and presenting evidence to the dependency court. *Id.* at 908-09  Rather, the court in *Beltran* clarified that social workers are entitled to absolute immunity when making "discretionary, quasi-prosecutorial decision to institute court dependency proceedings to take custody away from parents." *Id.* (quoting *Miller*, 335 F.3d at 898). As explained by the Ninth Circuit in *Meyers v. Contra Costa County Dept's of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987), social workers often must make quick decisions based upon incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children.  A social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit." *Id.*  In *Beltran*, however, the Ninth Circuit made clear that absolute immunity for social workers does not extend beyond that quasi-prosecutorial function:  "[social workers] are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition that they signed under penalty of perjury, because such actions aren't similar to discretionary decisions about whether to prosecute." *Id.* at 908.  Additionally, social workers have no immunity for claims arising out of their investigation. *Id.*

---

[3]While this case is almost directly on point, it was not distinguished or even cited by Oleyar's counsel.

16 - FINDINGS AND RECOMMENDATION

Here, the Dauvens contend Oleyar falsified facts in his petition(s) to the Clackamas County Circuit Court; failed to properly investigate claims of abuse by and against both Balkovic and the Dauvens; aided Balkovic in committing perjury; and handed control of the Dauvens' property to Balkovic.  In the absence of any allegations by the Dauvens that Oleyar knowingly signed an "under penalty of perjury" affidavit in support of his petition to the Circuit Court, the court here finds Oleyar's statements in petitions to the Circuit Court are protected by absolute immunity under the discretionary, quasi-prosecutorial decisions to institute court proceedings. *Beltran*, 514 F.3d at 908. There is no absolute immunity, however, for the other allegations of Oleyar's wrongdoing, *i.e.,* suborning perjury by Balkovic, failure to investigate claims of abuse and taking the Dauvens property without compensation.  Accordingly, Oleyar's request to dismiss Count Seven of the Dauvens' Second Amended Complaint should be granted.[4]

B.      *Failure to State a Claim*

Alternatively, Oleyar contends Counts Eight and Nine of the Dauvens' Second Amended Complaint fail to state a claim, as a matter of law.  Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege two essential elements:  (1) a federal constitutional or statutory right was violated; and (2)  the alleged violation was committed by a person acting under the color of state law.  *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  There is no dispute Oleyar was acting under color of state law,

---

[4] Alternatively, the court notes Count Seven, a conspiracy count, is subject to dismissal for failure to allege that claim with the specificity required for conspiracy claims. *See* Section I., above.

therefore, the question here is whether, in Counts Eight and Nine, the Dauvens have alleged the violation of a federal constitutional or statutory right.

>    1.    Count Eight - Fourteenth Amendment

In Count Eight, the Dauvens allege Oleyar acted under color of state law to deprive them:

>    of certain constitutionally protected rights under the Fourteenth Amendment to the Constitution of the United States including, but not limited to 1) the right to be free from unreasonable seizures; 2) the right not to be deprived of property without due process of law; 3) the right to be free from intrusion into private affairs (contracts and agreements) by a person acting under color of State Law; 4) the right to be free from unwarranted State government action; and 5) the right to just compensation for taking of property.

(Second Am. Compl. ¶ 198.)

The essence of Count Eight is that Oleyar, acting under color of state law, was responsible for the Dauvens' uncompensated loss of personal property. (There are no allegations Oleyar "seized" the Dauvens either by taking them or causing them to be taken into custody. Moreover, the Dauvens do not allege a violation of the Fourth Amendment.) In relevant part the Fourteenth Amendment provides:

>    No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. There is no question that either a wrongful seizure of personal property or the wrongful destruction of a property interest may give rise to a cause of action under the Fourteenth Amendment.

U.S. Const. amend. XIV, § 1.

The Dauvens argue Oleyar violated the Fourteenth Amendment by depriving them of property without due process of law. They have failed to set forth sufficient allegations to show Oleyar deprived them of either a possessory or ownership interest in the property. Oleyar did not

take possession of the Dauvens' property, transfer it elsewhere, or damage or dispose of it. In fact, the Dauvens alleged that Balkovic had "Stauffer dump the Dauvens' possessions on the Somers wet lands." (Second Am. Compl. § 108.) Nor did Oleyar make any determination about who had a legal right to the property. Rather, the Second Amended Complaint alleges Oleyar was responsible for a series of events that culminated in the Dauvens being forced to leave behind some of their personal property. As unfortunate as these circumstances were, Oleyar cannot be found to have violated the Dauvens' Fourteenth Amendment rights. *Compare Fuentes v. Shevin*, 407 U.S. 67 (1972) (state deprived plaintiffs of possessory interest in property by removing the property from plaintiffs' homes). Accordingly, Oleyar's request to dismiss Count Eight of the Dauvens' Second Amended Complaint should be granted.

2. Count Nine - Deprivation without Due Process

In Count Nine, the Dauvens allege Oleyar, under color of state law, acted:

in reckless disregard of the probable consequences: 1. in the failure to properly investigate the claims of Ms. Balkovic; 2. in the failure to investigate the claims against Ms. Balkovic; 3. in the suborning of Ms. Balkovic's Petition perjury that Mr. Oleyar witnessed the verbal abuse claimed against Plaintiff Barbara Dauven; 4. in the exercise of giving dominion or control over Plaintiffs' personal property to Joanne Balkovic; 5. arising from J.R. Oleyar's knowledge that the true reason for the Restraining Orders and the eviction was not Ms. Balkovic's claims, but, rather, the fact that Plaintiffs were involved in U.S. District Court cases with powerful defendants who wanted to harm and defame Plaintiffs, and the fact that Plaintiffs failed to show Oleyar deference.

(Second Am. Compl. ¶ 204.) Although Count Nine is styled "Deprivation of Property Without Due Process of Law" the allegations challenge Oleyar's investigation of the elder abuse claims by Balkovic against the Dauvens and, in turn, the Dauvens' claims of wrongdoing by Balkovic. Count Nine also includes a charge that Oleyar gave dominion and control of the Dauvens' personal property

19 - FINDINGS AND RECOMMENDATION

to Balkovic. However, as the court explained in Section II.B.1., above, the Dauvens failed to set forth sufficient allegations to show Oleyar deprived them of either a possessory or ownership interest in the property.

With respect to the Dauvens' charge that Oleyar was reckless in his investigation of the elder abuse charges, officers do not have an affirmative duty to investigate crimes in a particular manner or to protect one citizen from another. *See Gini v. Las Vegas Metropolitan Police Dep't,* 40 F.3d 1041, 1045 (9th Cir. 1994) (police have no affirmative duty to investigate crime in a particular way). The Dauvens claim it was Balkovic who was abusive and dishonest. Indeed, their Second Amended Complaint is replete with allegations about Balkovic's faulty character. Count Nine challenges Oleyar's failure to believe the Dauvens over Balkovic, including an explanation for Oleyar's decision to believe Balkovic – she was powerful and the Dauvens did not show Oleyar deference. (Second Am. Compl. ¶ 204.)

Oleyar had no affirmative duty to investigate the Dauvens' claim of Balkovic's wrongful conduct. *See, e.g., Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir. 1985) (court can find "no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim); *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 768 (2005) ("[T] he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."); *Baker v. McCollan,* 443 U.S. 137, 146 (1979) (sheriff executing arrest warrant has no constitutional obligation to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent and accused has no constitutional right to "an error-free investigation"); *Broam v. Bogan,* 320 F.3d 1023, 1032 (9th Cir.

2003) (same) Even assuming every statement made by the Dauvens is true, there is no constitutional

claim alleged in Count Nine.  Accordingly, Oleyar's request to dismiss Count Nine of the Dauvens'

Second Amended Complaint should be granted.

    *C.*    *Eleventh Amendment Immunity*

    Lastly, the court considers Oleyar's contention he is entitled to Eleventh Amendment

immunity from the Dauvens' § 1983 claims against him.  The Eleventh Amendment provides the

judicial power of the United States shall not extend to any suit in law or equity commenced or

prosecuted against a state.[5]  U.S. CONST. amend. XI.  The Eleventh Amendment bars citizens from

bringing suit in federal court against a state or state entity unless Congress has abrogated the state's

immunity, or the state has expressly consented to waive it.  *Alabama v. Pug*, 438 U.S. 781, 782

(1978).  Supplemental jurisdiction is also limited by the bar imposed by the Eleventh Amendment.

*Raygor v. Regents of the Univ. of Minnesota*, 534 U.S. 533, 540-42 (2002).  Oregon has neither

consented to suit by explicitly waiving its Eleventh Amendment immunity, nor has Congress

unilaterally abrogated Oregon's Eleventh Amendment Immunity in this instance.  *See, e.g., Rounds

v. Oregon State Bd. of Higher Ed.*, 166 F.3d 1032, 1035-36 (9th Cir. 1999).

    It is well-established that "a suit against a state official in his or her official capacity is not

a suit against the official but rather is a suit against the official's office," which "is no different from

a suit against the State itself."  *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989).

---

    [5]The Eleventh Amendment to the United States Constitution provides:

    The Judicial power of the United States shall not be construed to extend to any
    suit in law or equity, commenced or prosecuted against one of the United States
    by Citizens of another State, or by Citizens of Subjects of any Foreign State.

    U.S. CONST. amend. XI.

Because a suit against a state official in his official capacity is considered the equivalent of a suit against the State itself, suits for money damages against state officials are barred by the Eleventh Amendment. *See Hafer*, 502 U.S. at 27 ("State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.").

As mentioned above, the Dauvens' action against the Oleyar is grounded in § 1983, and seeks only monetary relief for the alleged violations. The Dauvens have not demonstrated the State waived immunity, nor has Congress abrogated the State's immunity, for the claims the dauvens assert here. Thus, the Eleventh Amendment bars the Dauvens' § 1983 claims against Oleyar seeking monetary damages arising from actions taken in his official capacity. To the extent the Dauvens brought suit against Oleyar for conduct taken in his *official capacity*, (*see* Second Am. Compl. ¶ 189 ("Defendant J.R. Oleyar, under color of title, as investigator for the State of Oregon Agency on Aging and Seniors and People with Disabilities . . . . "), Oleyar is entitled to Eleventh Amendment immunity for the conduct alleged in the Dauvens' Second Amended Complaint. The Eleventh Amendment does not, however, bar federal or pendent state claims seeking damages against a state official acting personally. *Pena*, 976 F.2d at 472-74. As such, Oleyar's request to dismiss the Dauvens' § 1983 claims should be granted only to the extent those Counts allege conduct taken in Oleyar's official capacity.

III.    State Law Claims

With the dismissal of Counts One through Three (§ 1985) and Seven through Nine (§ 1983), only state claims remain. A district court may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.

22 - FINDINGS AND RECOMMENDATION

1367(c)(3). Moreover, when a district court dismisses all federal-law claims before trial, "the balance of the factors balance to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*); *see, e.g., Crane v. Allen*, No. 3:09-cv-1303-HZ, 2012 WL 602432, at *10 (D. Or. Feb. 22, 2012) ("Having resolved all claims over which it had original jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.").

The factors of judicial economy, convenience, and fairness weigh in favor of this court declining to exercise supplemental jurisdiction. There has been no discovery undertaken, and state court is a convenient forum for the parties. Moreover, by declining to exercise supplemental jurisdiction, this court respects the values of federalism and comity. There is no purpose to be served by this court exercising supplemental jurisdiction over the state law claims and, as such, the court declines to do so.

As explained in Section VI., below, the court recommends dismissal of the Dauvens' federal claims, without prejudice. Nevertheless, the court declines to reach the state claims at this juncture. The Dauvens will be permitted one final opportunity to amend their Complaint. If that fails, the federal claims will be dismissed, with prejudice. At that point, the state claims will be dismissed, without prejudice, and with leave to refile those claims in state court. The court notes that upon filing the Second Amended Complaint the Dauvens added four additional state claims. In the interests of judicial economy, the court reserves ruling on those claims and all other state law claims asserted, until the Dauvens are able to establish a basis for jurisdiction in this court. Accordingly,

the Dauvens's state law claims should be dismissed, without prejudice, and with leave to refile those claims in state court.

VI.     Leave to Amend

A *pro se* litigant must be given leave to amend his or her complaint unless it appears the deficiency cannot be cured by amendment. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). Viewing all allegations in the Second Amended Complaint as true and construing all inferences in the Dauvens' favor, this court concludes it has no jurisdiction over their claims asserted pursuant to 42 U.S.C. §§ 1983, 1985. While the deficiencies may be cured by amendment, the Dauvens have already filed three lengthy Complaints, alleging dozens of claims, with no success. Nevertheless, in the event Judge Brown adopts this court's Findings and Recommendation here, the Dauvens should be granted one final leave to cure the deficiencies in their federal claims.

Accordingly, the Third Amended Complaint will be due (30) days after Judge Brown issues an Order on this decision. There will be no extensions of time granted for the filing of the Third Amended Complaint. Additionally the Dauvens are directed to file the Third Amended Complaint with the court only, and not effectuate service of that pleading on defendants. Upon receipt of the Third Amended Complaint, the court, *sua sponte*, will review the federal claims asserted to determine whether the deficiencies noted in this decision have been cured. *See* 28 U.S.C. § 1915(e)(2)(B) ("court shall dismiss the case at any time if the court determines . . . the action . . . is frivolous . . . [or] fails to state a claim . . . .")  If the Dauven's §§ 1983 and 1985 claims in the Third Amended Complaint are frivolous, or otherwise fail to state a claim, the court will issue a Findings and Recommendation dismissing the federal claims, with prejudice. In that event, the Dauvens will be permitted to file their Objections to such dismissal with Judge Brown. Alternatively, if this court

does accept the Dauvens' Third Amended Complaint for filing, it will issue an Order and, at that time, the Dauvens must serve all defendants with the Third Amended Complaint. All defendants will be permitted to file a responsive pleading, including motions to dismiss, within the time periods allowed by the Federal Rules of Civil Procedure and this court's Local Rules.

*Conclusion*

For the reasons set forth above:

(1)    Randall Stauffer's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #180) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six and Eleven;

(2)    Christina Stauffer's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss (doc. #181) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six and Ten;

(3)    Ian Reekie and Reekie Properties, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (doc. #184) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six;

(4)    J.R. Oleyar's Motion to Dismiss (doc. #190) should be GRANTED in its entirety;

(5)    Samuel Taylor's Motion to Dismiss (doc. #200) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six;

(6)    U.S. Bancorp, U.S. Bank NA and Wells Fargo Bank NA's Motion to Dismiss Plaintiffs' Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (doc. #207) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six;

(7)    Daniel Mary Margaret Weibel's Motion to Dismiss for Failure to State a Claim (doc. #208) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six;

(8)    Annie Meckley Tenneson's Motion to Dismiss Second Amended Complaint (doc. #209) should be GRANTED, with respect to Counts One, Two and Three; and DENIED, as moot, with respect to Counts Four, Five, Six;

Accordingly, the Dauvens' Second Amended Complaint (doc. #179) should be DISMISSED, without prejudice.

Dated this 2nd day of March 2015

_____
JOHN V. ACOSTA
United States Magistrate Judge

*Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due March 17, 2015. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.